IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00571-LTB-CBS

PHILIP HILL,
        Plaintiff,
v.

CORRECTIONS CORPORATION OF AMERICA, and
EXECUTIVE DIRECTOR OF CORRECTIONS CORPORATION OF AMERICA,
        Defendants.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on Defendant Corrections Corporation of America's ("CCA") Motion for Summary Judgment (filed February 20, 2009) (doc. # 108). Pursuant to the Order of Reference dated June 20, 2007 (doc. # 18) and the memorandum dated February 23, 2009 (doc. # 109), this matter was referred to the Magistrate Judge. The court has reviewed the Motion, Mr. Hill's Brief in Opposition ("Response") (filed June 19, 2009) (doc. # 137), CCA's Reply (filed June 23, 2009) (doc. # 138), the exhibits, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

        Mr. Hill is incarcerated at the Crowley County Correctional Facility ("CCCF"), a privately run prison in Olney Springs, Colorado which operates under a contract with the Colorado Department of Corrections ("CDOC"). (*See* Second Amended Prisoner Complaint ("SAC") (doc. # 13) at p. 2 of 16).[1] Mr. Hill alleges that he was denied adequate medical treatment for cysts from approximately March 2005 to August 2007 while he was incarcerated at CCCF. (*See* SAC (doc. # 13) at p. 13, 15-16 of 16 (listing three federal

_____
        [1]   Mr. Hill was scheduled to be released from incarceration on June 25, 2009 and intends to relocate to Florida. (*See* Courtroom Minutes/Minute Order (doc. # 136)).

claims and three state law claims).  On May 9, 2008, the District Judge dismissed Claim

Two and Defendants Ortiz, Miller, Schoenmakers, and John and Jane Does from the

lawsuit.  (*See* Order (doc. # 81)).  In Claims One and Five, Mr. Hill alleges pursuant to 42

U.S.C. § 1983 that the remaining Defendants violated his constitutional rights under the

Eighth Amendment.  (*See* SAC (doc. # 13) at p. 15 of 16).  In Claims Three, Four, and Six,

Mr. Hill alleges negligence, medical negligence and malpractice, and intentional infliction

of emotional distress pursuant to state law.  (*See* SAC (doc. # 13) at p. 16 of 16).  Mr. Hill

seeks declaratory relief, compensatory damages, and punitive damages.  (*See id.* at pp.

15-16 of 16).


II.     Defendant CCA's Motion for Summary Judgment

A.      Standard of Review

>       The purpose of a summary judgment motion is to assess whether trial
> is necessary.  Rule 56(c) provides that summary judgment shall be granted
> if the pleadings, depositions, answers to interrogatories, admissions, or
> affidavits show that there is no genuine issue of material fact and the moving
> party is entitled to judgment as a matter of law. The non-moving party has the
> burden of showing that issues of undetermined material fact exist.  A party
> seeking summary judgment bears the initial responsibility of informing the
> court of the basis for its motion and identifying those portions of the
> pleadings, depositions, interrogatories, and admissions on file together with
> affidavits, if any, that it believes demonstrate the absence of genuine issues
> for trial.

*Nutting v. RAM Southwest, Inc.*, 106 F. Supp. 2d 1121 (D. Colo. 2000) (internal quotation

marks and citations omitted).  The Tenth Circuit Court of Appeals has described the

standard of review for a summary judgment motion in a lawsuit brought by a plaintiff in his

*pro se* capacity:

>       For dispositive issues on which the plaintiff will bear the burden of proof at
> trial, he must go beyond the pleadings and designate specific facts so as to
> make a showing sufficient to establish the existence of an element essential
> to [his] case in order to survive summary judgment.  [E]vidence, including
> testimony, must be based on more than mere speculation, conjecture, or
> surmise. Unsubstantiated allegations carry no probative weight in summary
> judgment proceedings. Because Mr. [Hill] is representing himself, we liberally
> construe his pleadings; however, we do not act as his advocate.

*Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (internal quotation marks and citations omitted).

As the SAC has been sworn to under penalty of perjury (*see* doc. # 13 at p. 15 of 16), the court may treat it as an affidavit. *Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir. 1997). *See also Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) ("Although a nonmoving party may not rely merely on the unsupported or conclusory allegations contained in his pleadings, a verified complaint may be treated as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e)."). "Rule 56(e) requires that the affidavit be based on personal knowledge, contain facts which would be admissible at trial, and show that the affiant is competent to testify on the matters stated therein." *Conaway*, 853 F.2d at 792. Where the court treats a verified complaint as an affidavit, whether a party's affidavit in opposition to summary judgment is "sufficient to create a genuine issue of material fact must be evaluated in light of the principle that 'conclusory allegations without specific supporting facts have no probative value.' " *Nichols v. Hurley*, 921 F.2d 1101, 1113 (10th Cir. 1990) (quoting *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)). "[T]here may be cases where the sole reliance on a verified complaint would be insufficient to meet a nonmoving party's burden . . . , especially when the allegations contained in the pleading are merely conclusory." *Conaway*, 853 F.2d at 792-93. An affidavit merely stating conclusory allegations is insufficient to withstand a defendant's properly supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 884 (1990) (quoting Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading")). The court must determine whether Mr. Hill has met his burden of presenting specific facts to overcome CCA's Motion.

B.    Analysis

1.    Claims One and Five for Violation of the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. Amend. VIII.   "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).   Certain conditions of confinement, if they inflict pain unnecessarily and wantonly, may constitute cruel and unusual punishment under the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  The Eighth Amendment prohibits prison officials from being deliberately indifferent to the serious medical needs of prisoners in their custody.  *See Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment.") (internal quotation marks and citation omitted).

An Eighth Amendment claim involves "a two-pronged inquiry, comprised of an objective component and a subjective component."  *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir.), *cert. denied*, 549 U.S. 856 (2006).  "Under the objective inquiry, the alleged deprivation must be sufficiently serious to constitute a deprivation of constitutional dimension."  *Self*, 439 F.3d at 1230 (internal quotation marks and citation omitted).  *See also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (Eighth Amendment violation recognized only if medical needs are "serious").  "[A] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (*quoting Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980)).  Under the subjective inquiry, the defendant must have acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The subjective component follows from the principle that "'only the unnecessary and wanton

4

infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297).  An inmate's complaint of inadequate medical care amounts to an Eighth Amendment claim if the inmate alleges "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106.

Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495-96 (10th Cir. 1990) (citation omitted).  An official acts with deliberate indifference if his or her conduct "disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Berry*, 900 F.2d at 1496.  The Supreme Court explained the test for deliberate indifference:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  *See also Whitley*, 475 U.S. at 319 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited . . . .").

Thus, in order to establish an Eighth Amendment claim that prison officials were deliberately indifferent to his medical needs, Mr. Hill must demonstrate that (1) he suffered objectively serious medical needs and (2) that the prison officials actually knew of and deliberately disregarded those needs.  *See Ramos*, 639 F.2d at 575 (two-pronged standard "requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious");  *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (same) (citation omitted).

An Eighth Amendment violation may also lie where the inmate complains of treatment that is merely delayed, rather than refused.  *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  In such circumstances, the inmate is required to make an additional

showing that the delay in receiving care caused "substantial harm." *Id.* Causation is also a necessary element of a § 1983 claim of deliberate indifference. *Daniels v. Gilbreath*, 668 F.2d 477, 488-89 (10th Cir. 1982).

In its analysis, the court assumes that Mr. Hill suffered an objectively serious medical need. (*See Gutierrez v. Peters*, 111 F.3d 1364, 1373-74 (7th Cir. 1997) ("we have no hesitation concluding" that pilonidal cyst is sufficiently serious medical condition)). The court next examines whether Defendants acted with deliberate indifference. Mr. Hill alleges that his serious medical condition "was not timely or properly treated . . . ." (SAC (doc. # 13) at p. 5 of 16 ¶ 2). Mr. Hill alleges:

> The defendants failed to give adequate medical treatment to the plaintiff.
>
> The defendants delayed in providing surgery for the plaintiff, which in turn, caused the development of multiple cyst outbreak and body poisoning.
>
> The defendants delayed in providing an expert and specialist for the serious medical problems of the plaintiff which caused severe complications and furtherance of pain and suffering.
>
> The defendants failed to adequately treat the serious medical problem during the first surgery which caused the furtherance of medical complications.

(SAC (doc. # 13) at p. 13 of 16). Mr. Hill summarizes his allegations against CCA and the Executive Director of CCA:

> Defendant Correctional Corporation of America (CCA) and the Executive Director of CCA are named because they have failed to act despite the numerous complaints and violations both state and federal which have been filed against the CCCF facility and staff, they have failed to carryout there [sic] responsibilities to promote adequate medical care in the CCCF facility, they have failed to provide adequate and qualified medical care in the CCCF facility, they have failed to provide adequate and qualified medical and prison staff for the CCCF facility, they have failed to adequately train, supervise, and direct there [sic] medical and prison staff at the CCCF facility, they have failed to remedy unlawful medical conditions and practices that they are well informed about, they have failed to adequately establish proper policy and procedures in the medical department and in the facility that would enable the proper medical treatment for all inmates.

(SAC (doc. # 13) at ¶ 62).[2]

At all times relevant to this case, Mr. Hill was incarcerated at CCCF. (*See* SAC (doc. # 13) at p. 5 ¶¶1-5). Mr. Hill arrived at CCCF on March 3, 2005. (*See* Transcript of Deposition of Mr. Hill (CCA's Exhibit A-1) (doc. # 108-2 at p. 3 of 8)). Upon arriving at CCCF, Mr. Hill explained to the medical staff that he had a history of developing pilonidal cysts, which started five months earlier when he was housed at the Jefferson County Jail. (*See id.* at p. 4 of 8; *see also* Mr. Hill's Exhibit 1-L (doc. # 137 at p. 21 of 26)).

On or about May 11, 2005, Dr. Sutton examined Mr. Hill at CCCF medical. At that time Dr. Sutton determined that the pilonidal cyst did not require immediate surgery and prescribed an antibiotic. (*See* CCA's Exhibit A-1 (doc. # 108-2 at pp. 5-6 of 8)). Mr. Hill took the antibiotics for forty-five days and a nurse practitioner saw him for a medical follow-up examination on or about June 28, 2005. (*See id.* at p. 7 of 8)). The nurse practitioner determined that Mr. Hill needed surgery and informed him that she would schedule a surgery consultation for him. (*See id.*).

Mr. Hill had a surgery consultation on July 7, 2005 with Dr. Rina Shinn at the Colorado Mental Health Institute at Pueblo ("CMHI"). (*See* CCA's Exhibit A-1 (doc. # 108-2 at p. 8 of 8); Declaration of Dr. Herbert Servis (CCA's Exhibit A-2) (doc. # 108-3 at p. 2 of 5 ¶ 2); CCA's Exhibit A-3 (doc. # 108-4 at p. 2 of 2)). During the surgery consultation, Dr. Shinn noted that Mr. Hill had a draining sinus tunnel with external opening on his right buttock, two inches from the right side of the midline. The diagnosis was a pilonidal cyst. Mr. Hill reported to Dr. Shinn that he had a history of cysts off and on for the previous five years. (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 2 of 5 ¶ 2; CCA's Exhibit A-3 (doc. # 108-4 at p. 2 of 2)).

Dr. Servis performed surgery on Mr. Hill on November 10, 2005. Dr. Servis excised

---

[2]   Pursuant to the Waiver of Service by Defendant Corrections Corporation of America, "[t]here is no person at Corrections Corporation of America with the title Executive Director." (*See* doc. # 35).

the cyst area.   Normally, the surgical procedure performed would resolve the problem Mr. Hill was experiencing ninety-five percent of the time.   (*See* CCA's Exhibit A-2 (doc. # 108-3 at pp. 2-3 of 5 ¶ 3);   CCA's Exhibit A-4 (doc. # 108-5 at pp. 2-3 of 4)).   Mr. Hill alleges that the delay in receiving this surgery "had allowed the track of the cyst and drainage to travel along the rectal lining and was located below the anal opening causing a great alarm that the infection may have entered the bowel region which would develop severe injury which also could result in death."   (SAC (doc. # 13) at p. 6 of 16 ¶ 11).   However, the evidence shows that none of these alleged possibilities actually occurred.   Mr. Hill was next examined by Dr. Servis on November 25, 2005.   Mr. Hill's surgical wound was healing properly.   (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 3 of 5 ¶ 4)).   Dr. Servis prescribed two types of pain medication.   (*See* Mr. Hill's Exhibit 1-A (doc. # 137 at p. 10 of 26); *see also* Mr. Hill's Exhibit 1-A (doc. # 137 at p. 10 of 26)).[3]   Dr. Shinn examined Mr. Hill on January 9, 2006 and noted that the surgical wound had healed.   (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 3 of 5 ¶ 5); *see also* Mr. Hill's Exhibit 1-M (doc. # 137 at p. 23 of 26)).   Mr. Hill alleges that on January 24, 2006, "upon belief, the area w[h]ere the cyst existed was now infected."   (SAC (doc. # 13) at p. 9 of 16 ¶ 37).   However, contrary to Mr. Hill's allegation, there is no evidence in the medical record before the court that Mr. Hill had an infection at that time.

On February 16, 2006, while examining Mr. Hill, Dr. Shinn found another area that was bleeding.   It was in a different location than the original cyst and was diagnosed as a possible anal fistula.   (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 3 of 5 ¶ 6);   CCA's Exhibit A-5 (doc. # 108-6 at p. 2 of 2) (same as Mr. Hill's Exhibit 1-C (doc. # 137 at p. 12 of 26)).

---

[3]   While Mr. Hill alleges that CCCF staff denied or changed his prescribed pain medications (*see, e.g.*, SAC (doc. # 13) at pp. 7, 9, 10, 11 of 16 ¶¶ 22, 38, 52-53, 56, 59), none of these unidentified individuals is currently a defendant in this lawsuit. Further, the record reflects that Mr. Hill was almost continuously prescribed pain medication and that CCCF staff noted those prescriptions.   (*See* Mr. Hill's Exhibits 1-A, 1-B, 1-E, 1-F, 1-G, 1-H, 1-I, 1-K, 1-M (doc. # 137 at pp. 10-11, 14-18, 20, 23 of 26)).

Again, Mr. Hill alleges that "there was an added danger developing because the cyst was now dangerously close to Hill's sphincter and the area would be hard to keep infection free after the operation. The risk of loss of bow[e]l movements was a definite possibility because of the delay." (SAC (doc. # 13) at p. 9 of 16 ¶ 43).  Again, the evidence shows that none of these alleged possibilities actually occurred.  On March 23, 2006, Dr. Servis performed a second surgery on Mr. Hill and excised the new problem area of the sinus track.  (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 3 of 5 ¶ 7);  CCA's Exhibit A-6 (doc. # 108-7 at pp. 2-3 of 3)).  Dr. Shinn saw Mr. Hill again on June 19, 2006, and determined that Mr. Hill's wound "had healed nicely."  (*See* CCA's Exhibit A-2 (doc. # 108-3 at pp. 3-4 of 5 ¶ 8); CCA's Exhibit A-7 (doc. # 108-8 at p. 2 of 2); *see also* Mr. Hill's Exhibit 1-H (doc. # 137 at p. 17 of 26)).

Dr. Shinn next examined Mr. Hill on February 5, 2007, after Mr. Hill had complained of drainage from the peri-anal opening.  Dr. Shinn "observed punctuate draining point" at that time.  Mr. Hill's pain medication was resumed and an appointment was made for Mr. Hill to be examined further by Dr. Servis.  (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 4 of 5 ¶ 9);  CCA's Exhibit A-8 (doc. # 108-9 at p. 2 of 2) (same as Mr. Hill's Exhibit 1-D (doc. # 137 at p. 13 of 26)).  Dr. Servis examined Mr. Hill on February 22, 2007 and noted that the previous cyst excision had healed without complication.  Dr. Servis noted that Mr. Hill had "a small pit in the natal cleft distally approximately 5 mm from the inferior edge of the incision."  Dr. Servis found "no apparent infection or inflammation at this time."  Dr. Servis recommended a re-evaluation under general anesthesia with proctoscopy . . . and a complete evaluation of the anal canal."  (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 4 of 5 ¶ 10);  CCA's Exhibit A-9 (doc. # 108-10 at p. 2 of 2)).

Dr. Servis performed an examination under anesthesia on March 15, 2007. "There was no evidence of an extension into the anus" and "the latest wound area was clean and healing well."  (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 4 of 5 ¶ 11);  CCA's Exhibit A-10

(doc. # 108-11 at p. 2 of 2)).  Dr. Servis conducted a follow-up examination of Mr. Hill on March 22, 2007, at which time he noted that Mr. Hill's surgical wound was "completely healed, and there was no drainage." (*See* CCA's Exhibit A-2 (doc. # 108-3 at pp. 4-5 of 5 ¶ 11);  CCA's Exhibit A-11 (doc. # 108-12 at p. 2 of 2)).

During a further examination by Dr. Servis on May 17, 2007, Mr. Hill complained of a new drainage site.  Mr. Hill had developed "a separate site at the 7 o'clock position from the anus." "Attempts to probe the site back in the anal canal were unsuccessful." Dr. Servis prescribed "a triple antibiotic ointment" and "another examination in approximately one month." (*See* CCA's Exhibit A-2 (doc. # 108-3 at pp. 4-5 of 5 ¶ 12);  CCA's Exhibit A-12 (doc. # 108-13 at p. 2 of 2)).  When Dr. Servis next examined Mr. Hill on June 14, 2007, the wound in the peri-anal region [was] healed with triple antibiotic ointment," and "[t]here ha[d] been no recurrence" since the last examination. (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 5 of 5 ¶ 13);  CCA's Exhibit A-13 (doc. # 108-14 at p. 2 of 2)).

Dr. Servis saw Mr. Hill for the last time on August 23, 2007, when Mr. Hill had some complaints of continued drainage.  Dr. Servis noted a small dimple that appeared healed. After a long discussion with Dr. Servis, Mr. Hill was satisfied that "his peri-anal symptoms were more than ninety percent improved . . . , that this is a manageable problem," and that "he will seek medical attention if it gets worse."  Dr. Servis planned to see Mr. Hill "on a routine basis in approximately 3-4 months. . . ." (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 5 of 5 ¶ 14);  CCA's Exhibit A-14 (doc. # 108-15 at p. 2 of 2)).

First, to the extent that Mr. Hill alleges that he received inadequate treatment, he has not demonstrated that the course of treatment provided so deviated from the standard of care as to reflect deliberate indifference.  *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (plaintiff entitled to prove his case by establishing that doctor's "course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference in violation of his eighth amendment right to be free from cruel and unusual

punishment."").   Mr. Hill has presented only his conclusory allegations, not sufficient evidence to refute CCA's evidence that his treatment was based on an objective evaluation of his medical needs.   "The record does not even approach establishing a denial of adequate medical care, much less an issue relating to a culpable state of mind, *i.e.*, a deliberate indifference . . . to . . . medical conditions." *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993).   Contrary to Mr. Hill's allegations, the evidence demonstrates that Mr. Hill was provided continuous and adequate medical care throughout the time period alleged in the SAC.   For this reason, Mr. Hill's allegations do not form a basis for relief pursuant to § 1983.

Second, Mr. Hill merely presents conclusory allegations that amount to no more than his disagreement with the treatment provided.   Mr. Hill's disagreement with the medical treatment he received does not rise to the level of a constitutional violation.   *See Estelle*, 429 U.S. at 107 (disagreement regarding treatment is not sufficient to maintain a deliberate indifference cruel and unusual punishment claim).   Whether a course of treatment is appropriate "is a classic example of a matter for medical judgment," that is insufficient to sustain a claim under the Eighth Amendment.   *Estelle*, 429 U.S. at 107 (noting that medical decision to forego one form of treatment may be negligence but is not a constitutional violation).   *See also Perkins v. Kansas Dept. Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation.");   *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("[a] difference of opinion does not support a claim of cruel and unusual punishment");   *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992) ("Plaintiff's belief that he needed additional medication, other than that prescribed by the treating [medical provider] . . . is . . .  insufficient to establish a constitutional violation.") (citations omitted); *Ramos*, 639 F.2d at 575 (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation).   The

medical evidence in the record contradicts Mr. Hill's conclusory allegations.  As a layperson untrained in medicine, Mr. Hill is not qualified to determine the proper course of treatment for his medical condition or to contradict the medical evidence in the record.  *See Barrett v. Coplan*, 292 F. Supp. 2d 281, 285 (D.N.H. 2003) ("Adequate medical care requires treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations.") (internal quotation marks and citation omitted).  Mr. Hill's disagreement with his medical treatment does not form a basis for relief pursuant to § 1983.

Third, Mr. Hill's opinion that the treatment he received was ineffective amounts to no more than an allegation of negligence.  "'[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.'"  *Green*, 108 F.3d at 1304 (citing *Estelle*, 429 U.S. at 106).  *See also Pressley v. Blaine*, 544 F. Supp. 2d 446, 454 (W.D. Pa. 2008) ("Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation.") (citations omitted).  For this reason also, Mr. Hill's allegations do not form a basis for relief pursuant to § 1983.

To the extent that Mr. Hill alleges that his treatment was delayed, he has not met his burden of demonstrating that the delay caused him any harm.  Only delays that result in "substantial harm" violate the Eighth Amendment.  *See Sealock*, 218 F.3d at 1210  (delay in providing medical care to a prisoner constitutes an Eighth Amendment violation only if it results in substantial harm) (citing *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (18 month delay for elective heart surgery did not violate Eighth Amendment)); *White v. State of Colorado*, 82 F.3d 364, 366-67 (10th Cir. 1996) (two-year delay in surgery on inmate's leg did not violate the Eighth Amendment because the delay caused no further damage to the leg).  Other than his own lay opinion, Mr. Hill has presented no evidence that he was

harmed or his condition worsened in any way due to the actions of CCA.  The evidence in the record does not support Mr. Hill's allegation that there was any delay "in providing surgery" or that any delay caused him harm.

> "Any delay in Mr. Hill receiving his initial surgical consultation could not have resulted in a worsening of his perianal condition.  When the first surgical excision was performed, there was no evidence of other problem areas, even after probing.  In addition, there is no way medical providers can locate secondary problem areas until they come to the surface and begin to drain.  After the first excision there was no reason to believe an additional sinus track or cyst existed."

(*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 5 of 5 ¶ 15).

Further, to the extent that Mr. Hill attempts to hold CCA liable under § 1983 for the acts of its employees, under § 1983 liability cannot be imposed "vicariously on a theory of respondeat superior."  *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006).  *See also Smedley v. Corrections Corp. of America*, 175 Fed. Appx. 943, 946 (10th Cir. Dec. 20, 2005) (unpublished op.) ("[A] private actor such as CCA 'cannot be held liable solely because it employs a tortfeasor – or, in other words . . . cannot be held liable under § 1983 on a respondeat superior theory.' " (citation omitted)).[4]  Rather, a private corporation is liable under § 1983 only when an official policy or custom of the corporation causes or is the "moving force of the constitutional violation."  *Monell v. Dept. of Social Svcs.*, 436 U.S. 658  2018 (1978).  *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (traditional municipal liability principles apply to claims brought pursuant to 42 U.S.C. §1983 against private corporations);  *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) ("a private corporation is liable under § 1983 *only* when an official policy of custom of the corporation cause the alleged deprivation of federal rights") (emphasis in original) (citation omitted).  Thus, CCA would incur liability under § 1983 only if the harm had resulted from a policy or custom on the part of the corporation.  *See Smedley*, 175 Fed. Appx. at 946 ("in order to hold CCA liable for the alleged tortious acts of its agents,

---

[4]   A copy of this unpublished decision is attached to this Recommendation.

[the plaintiff] must show that CCA directly caused the constitutional violation by instituting an 'official municipal policy of some nature,' that was the 'direct cause' or 'moving force' behind the constitutional violations" (citations omitted)).

"To establish municipal liability, a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993-994 (10th Cir. 1996) (citation omitted).

> [I]t is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). Other than the actions or inactions of CCA's employees, Mr. Hill makes no specific allegation concerning the alleged wrongful conduct of CCA. While Mr. Hill generally alleges that CCA has "failed to adequately establish proper policy and procedures in the medical department and in the facility that would enable the proper medical treatment of inmates" (*see* SAC (doc. # 13) at ¶ 62), he does not allege CCA's responsibility arises from its implementation of a custom or policy that resulted in his injury. Mr. Hill has not proffered any evidence that an official policy or custom of CCA was the "moving force" behind the alleged violation of his civil rights by CCA employees. For this reason also, Mr. Hill fails to establish a § 1983 claim against CCA. Further, as the court has determined that Mr. Hill has not demonstrated any constitutional violation by CCA employees, CCA cannot be held liable for an unconstitutional policy or custom. *See, e.g., Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002) (declining to hold a municipality liable for an unconstitutional policy or custom "when there was no underlying constitutional violation by any of its officers"). In sum, Mr. Hill has established no violation of his Eighth Amendment

constitutional rights by CCA sufficient to state any cognizable 42 U.S.C. § 1983 claim.[5]

2.      Claims Three and Four for Negligence, Medical Negligence, and Malpractice

In his third and fourth claims for relief, Mr. Hill alleges negligence of the Defendants

based upon his medical treatment at CCCF.  (*See* SAC (doc. # 13) at pp. 11 of 16 ¶ 62,

16 of 16,  ¶¶ 5-6).  To the extent that Mr. Hill bases these claims on the negligence of

physicians employed by CCA, the corporate practice of medicine doctrine precludes his

---

[5]      Mr. Hill indicates that he is suing Defendant "Executive Director of CCA" in his or her individual capacity.  (*See* SAC (doc. # 13) at p. 2 of 16 ¶ 4).  Personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law.  *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).   Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal responsibility.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted);  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted);  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

A defendant may not be held liable merely because of his or her supervisory position.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996).  There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise.  *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  *See also Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Mr. Hill has failed to plead any facts to identify the "Executive Director of CCA" or to demonstrate that he or she had any personal participation in or any supervisory liability for the alleged violations of Mr. Hill's constitutional rights.  Mr. Hill does not identify any specific action Defendant "Executive Director of CCA" took that gave rise to a constitutional violation.  *See McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983) (an individual cannot be held liable in a section 1983 action unless he "participated or acquiesced" in an alleged constitutional violation).  Mr. Hill has not adequately alleged "an affirmative link between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates."  *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks and citations omitted).  At best, Mr. Hill's claims against Defendant "Executive Director of CCA" are unspecified *respondeat superior* claims that are insufficient to state a claim upon which relief can be granted.  Defendant "Executive Director of CCA" is properly dismissed as to the federal law claims in this civil action.

claims.

In Colorado, under the common law corporate practice of medicine doctrine, "a corporation may not employ physicians, perform medical services, or interfere with a physician's independent medical judgment." *Estate of Harper v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275 (Colo. App. 2006) (citing *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo. 2002) ("it is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine")).   The doctrine shields corporations from vicarious liability for the negligent acts of their physicians. *See id.* at 275. In 2003, Colorado's General Assembly reinstated the corporate practice of medicine doctrine to the extent that caselaw had created an exception to it.  *See* Colo. Rev. Stat. § 12-36-134(1)(b), (f) & (7)(a) (2005).  While physicians may be employed by hospitals, *see* Colo. Rev. Stat. § 25-3-103.7(2), and by professional service corporations owned by physicians, *see* Colo. Rev. Stat. § 12-36-134, these legal relationships do not expose professional corporations and hospitals to vicarious liability for the negligent acts of their medical professionals. *See* Colo. Rev. Stat. § 12-36-134(1)(f) ("Nothing in this article shall be construed to cause a professional service corporation to be vicariously liable to a patient or third person for the professional negligence or other tortious conduct of a physician who is a shareholder or employee of a professional service corporation.").  Thus, CCA does not owe Mr. Hill any legal duty for the alleged negligence of physicians employed at CCCF.

Nor has Mr. Hill presented sufficient evidence of CCA's own negligence, medical negligence, or malpractice.  In Colorado, "[t]o obtain submittal of a negligence claim to a jury, the plaintiff must establish a prima facie case demonstrating the following elements: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff was injured; and (4) the defendant's breach of duty caused the injury." *Raleigh v. Performance Plumbing and Heating*, 130 P.3d 1011, 1015 (Colo. 2006) (citations omitted). In a medical malpractice case, "[if] no standard is established by the testimony of

physicians, there is no standard for the determination of the ultimate question of the physician's negligence." *Smith v. Curran*, 28 Colo. App. 358, 472 P.2d 769 (1970).  While there are fact situations which would be easily understood by a jury without the aid of expert evidence, this case does not fall into that category, and Mr. Hill has not provided any expert evidence of medical negligence or malpractice.  Mr. Hill has further failed to provide sufficient evidence that CCA caused any injury to him.  The evidence before the court demonstrates that Mr. Hill was provided continuous and adequate medical care throughout the time period alleged in the SAC.  As Mr. Hill has not presented sufficient evidence on the elements of a negligence, medical negligence, or malpractice claim, summary judgment is properly granted on his Claims Three and Four.

3.      Claim Six for Intentional Infliction of Emotional Distress

In his sixth claim for relief, Mr. Hill alleges intentional infliction of emotional distress based on the medical treatment he received at CCCF.  (*See* SAC (doc. # 13) at p. 16 of 16 ¶ 7).  The elements of the tort of intentional infliction of emotional distress are: (1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the plaintiff incurred severe emotional distress which was caused by the defendant's conduct.  *Culpepper v. Pearl Street Bldg., Inc.*, 877 P.2d 877, 882 (Colo. 1994) (citing CJI-Civ 3d 23:1).  *See also Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665 (Colo. 1999) (describing this tort as "intentional infliction of emotional distress by outrageous conduct"). While many plaintiffs believe that defendants' conduct has been outrageous, the tort of intentional infliction of emotional distress is extremely limited.  "Outrageous conduct" is defined as conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community."  *Culpepper*, 877 P.2d at 882 (quoting *Destefano v.*

*Grabrian*, 763 P.2d 275, 286 (Colo. 1988)).  *See also Riske v. King Soopers*, 366 F.3d 1085, 1089 (10th Cir. 2004) (same) (internal quotation marks and citations omitted).

> A person acts with intent to cause severe emotional distress when he engages in conduct with the purpose of causing severe emotional distress to another person, or he knows that his conduct is certain or substantially certain to have that result. A person acts recklessly in causing severe emotional distress in another if, at the time of the conduct, he knew or reasonably should have known that there was a substantial probability that his conduct would cause severe emotional distress to the other person.

*Culpepper*, 877 P.2d at 882 (citation omitted).

Although the question whether conduct is outrageous is generally one of fact to be determined by a jury, the trial court is initially responsible for determining whether reasonable persons could differ on the question. *English v. Griffith*, 99 P. 3d 90, 93 (Colo. App. 2004) (citation omitted). "Where it is clear to the court that the conduct complained of cannot be considered as rising to the egregious standard required, a claim for outrageous conduct is properly dismissed." *Shackelford v. Courtesy Ford, Inc.*, 96 F. Supp. 2d 1140, 1146 (D. Colo. 2000).

Mr. Hill argues that his claim for intentional infliction of emotional distress is supported by his Exhibits 1-J, 1-C, 1-K, 1-L, and 1-M (doc. # 137 at pp. 12, 19-21, 23 of 26). (*See* doc. # 137 at pp. 6-7 of 26). Exhibit 1-C reflects that during a return examination on February 16, 2006, Dr. Shinn found another area that was bleeding, in a different location than the original cyst, that was diagnosed as a possible anal fistula. (*See* doc. # 137 at p. 12 of 26; CCA's Exhibit A-2 (doc. # 108-3 at p. 3 of 5 ¶ 6)). Dr. Servis performed a second surgery on March 23, 2006 and excised the new problem area of the sinus track. (*See* CCA's Exhibit A-2 (doc. # 108-3 at p. 3 of 5 ¶ 7); CCA's Exhibit A-6 (doc. # 108-7 at pp. 2-3 of 3)). At a return examination on June 19, 2006, Dr. Shinn determined that Mr. Hill's wound "had healed nicely." (*See* CCA's Exhibit A-2 (doc. # 108-3 at pp. 3-4 of 5 ¶ 8); CCA's Exhibit A-7 (doc. # 108-8 at p. 2 of 2); *see also* Mr. Hill's Exhibit 1-H (doc. # 137 at p. 17 of 26)).

Mr. Hill's Exhibit 1-J notes that on August 3, 2006 he was denied a requested office visit without indicating the nature of his request.  Exhibit 1-K merely reflects a prescription for pain medication.  Exhibit 1-M reflects that Mr. Hill reported a history of cysts upon intake at CCCF.  The medical record shows that based upon examinations and a surgical consultation in May, June, and July of 2005, it was determined that the pilonidal cyst did not require immediate surgery, Mr. Hill was prescribed an antibiotic, and surgery was ultimately performed on November 10, 2005.  (*See* doc. # 137 at pp. 19-21, 23 of 26).  Mr. Hill's exhibits do not support his claim that CCA engaged in intentional infliction of emotional distress.  Mr. Hill fails to describe specific acts by CCA entitling him to relief and fails to explain how his general allegations establish the essential elements of a claim for outrageous conduct.  *See Houston v. Mile High Adventist Academy*, 872 F. Supp. 829, 835 (D. Colo. 1994) (allegations could not sustain a claim for outrageous conduct).  As Mr. Hill has not demonstrated that any conduct attributable to CCA rises to the level of extreme and outrageous conduct, summary judgment is properly entered on Claim Six.[6]

Accordingly,

IT IS RECOMMENDED that Defendant Corrections Corporation of America's ("CCA's") Motion for Summary Judgment (filed February 20, 2009) (doc. # 108) be GRANTED and judgment on the Second Amended Complaint (doc. # 13) be entered in favor of Defendants CCA and "Executive Director of CCA," with each party to pay his or its own costs, and attorney fees.

---

[6]   To the extent that Mr. Hill is suing "the Executive Director of CCA" for the same violations of state law, the court would apply the same analysis and make the same recommendation to grant summary judgment on the state law claims.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of July, 2009.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge